Good morning. I'm pleased to be the thorn between two roses here, presiding that we're going to call as our first case Dempsey v. Bucknell University, etal. And is it Mr. Boyle? I am Mr. Boyle. Very well. May it please the court, my name is Dennis Boyle, and I represent Reed Dempsey in this matter. I would respectfully request to reserve three minutes for rebuttal. Very well. Your Honors, this is an incident that began on September 1st, 2010, when Reed Dempsey became involved in an incident with a woman named Kelly Stefanowitz. As a result of that incident, Reed Dempsey was arrested. He was charged with very serious criminal conduct, and he was removed from school. The question that we have today, or the question that we would ask this court to address, is the concept of probable cause within the context of a search warrant. In this case, the Bucknell police officers conducted a fairly thorough investigation fairly quickly. They had, during the course of that investigation, gathered a number of exculpatory facts, witness statements, and other evidence. Let's talk about that. A lot of the statements that were in the affidavit that was presented to the judge who signed the warrant talked about their encounter. If we look at the encounter in three phases, the before they were in the Dempsey room, while they were in the Dempsey room without the presence of anyone else, and then afterwards. At the beginning of the affidavit, it talks about the complainant, describes the, I'll call it, horseplay or messing around that they were doing, hitting each other, etc. It then recounts what happened privately in the room. The witness statements that you talk about seem to be consistent with those two accounts. It disclosed that there was this horseplay, then there was this private section that none of these other individuals observed, and then thereafter there was the reaction to what occurred in the room or in the aftermath of what occurred in the room. So if we only focus on that last piece, the only real, I'll use your word, exculpatory, and I don't know whether it is or not, the only difference of account is the description of her being, we'll call her the complainant, laughing and perhaps being aggressive. So what is it that the judge was deprived of seeing that would have undermined the probable cause determination? I think the judge was deprived of seeing the, first of all, probable causes determined by a totality of the circumstances. So we would suggest that her behavior before, during, and after, in other words, in all three phases as you break it up, is relevant to determining whether a probable cause occurred. Secondly, the amount of time they were together viewed in the light most favorable to the plaintiff was perhaps as little as a minute. I have a little trouble with your saying viewing the evidence in the light most favorable to Mr. Dempsey in the context of the officers making a finding of probable cause. It seems to me the issue is, is there a dispute as to what witnesses said? Some witnesses have the time up to ten minutes alone. Why wouldn't it be the test that what would a reasonable officer consider at that point? In other words, the officer has no obligation to draw inferences in favor of Mr. Dempsey in terms of making a determination about what to present to the judge. And I think that's a fair statement, Your Honor. Obviously, the police officer does have some discretion to determine what she is going to present or not going to present. However, when there are differing facts from differing witnesses, and some witnesses say it happened very quickly and some witnesses say it happened much longer, that seems to me to be a fact that should be presented to the magistrate. Maybe that fact presented to the judge that it was from one to ten minutes. Correct, Your Honor. But when we're making our determination about whether, when we include the exculpatory information that should have been included in the affidavit, we're simply going to take that as one to ten minutes, not say we're going to draw the inference in favor of Mr. Dempsey that it was as little as one minute. The question is, what would a reasonable judge, what would a judge consider to be the significance of that one to ten minute discrepancy? And I think the one to ten minute discrepancy comes from the fact that there are different witnesses observing things at different times. Some witnesses saying it's as little as one minute, and other witnesses saying it's as much as ten minutes. The judgment asked this question points out perhaps some tension in our case law, and I wonder if you might address that. And that is that in Wright v. City of Philadelphia, we have said that a police officer doesn't need to reconcile competing accounts or at the outset make correct credibility determinations that may be shown afterwards to be incorrect. On the one hand, on the other hand, we've said in many cases that in evaluating issues around summary judgment, you take the facts in the light most favorable to the non-moving party. Is there a tension between those two, and how would you articulate how we work through them? It seems to me that there is a tension between those two in the case law. Obviously, a police officer in determining whether there's probable cause or not has to determine whether there's a fair probability that criminal conduct is afoot, based upon the evidence that the police officer knows at that point in time. If the police officer has reason to question whether there's probable cause or if there's exculpatory information, that may vitiate the probable cause that the police officer has. Certainly, when the police officer goes to a magistrate and obtains a warrant, the magistrate or the police officer substitutes the judgment of the magistrate for his or her judgment and allows the magistrate to determine whether there's probable cause or not. In that circumstance, the magistrate has to be presented with all the facts known to the police officer, or at least all the material facts under the case law. As we move from that probable cause determination to the litigation of this matter, this Court has said on several occasions that the existence of probable cause is frequently an issue of fact for the jury to decide. To the extent it's an issue of fact for the jury to decide, those facts at the summary judgment stage have to be resolved in the light most favorable to the non-moving party. Let's look back at the probable cause question that Judge Schwartz was asking you about. Because the standard, the fair probability standard, is a very low one for probable cause. And we have also said that when you're dealing with a victim eyewitness testimony, that that alone can establish probable cause in the absence of a substantial reason to doubt the witness's credibility. Here we have the eyewitness's account. We have the victim's, Kelly's, account. And we've got lots of corroboration for that, including the text messages, some pretty graphic photos, other witness accounts that are at least in large part consistent with the victim's account. Without discounting the severe consequences to read and acknowledging that there are times when police officers make mistakes, why isn't the low probable cause standard here satisfying? The probable cause standard is a low standard, but it is nevertheless a standard. It's based upon evidence. It's based upon a determination of credibility of the witnesses. In this case, the evidence is not satisfied because the police did not merely have the statement of Kelly Stefanowitz and the pictures as corroboration. By the time the charges were filed and the arrests were made, there had been a number of other investigations. Those other statements indicated that Kelly was laughing and playfully engaged with Reed. Observations inside the room indicated that she had pinned Reed down and not the opposite way, as she said. Statements afterwards when they came out of the room said that Reed tried to get away from her and she was the aggressor. So this is not a case where you have a victim saying something happened and no other evidence. You have lots of other evidence that questions the credibility of the victim. My question was on the issue of pinning down. Are you relying on the statement of Mr. Fast for that? I am, Your Honor. And he says he observed her pin him down as a representation? On the futon, that's correct, Your Honor. He says that in his statement of September 12th, his second statement, not his first statement, correct? And both affidavits were sworn out by that time. That may be correct, Your Honor. I don't recall the date of that as I sit here, as I stand here. You would not argue that an officer is recklessly omitting a statement that he doesn't yet have knowledge of? Well, if the officer did not have knowledge of the statement, then that would not be a reckless omission. However, there are a lot of other statements that are consistent with that concerning the conduct between the two. But there is agreement that there was a period of time when they were alone in the dorm room? There was a period of time when no one else was in the room with them. And the alleged victim says it turned from being playful to being an assault. So what's a reasonable officer to do under those circumstances? Well, the first statement by the victim actually to the RA, which was sent immediately to the administration, she said that nothing had happened, that it was horseplay, that it was voluntary and consensual, and that there was no problem. I think that the police officer at least needs to take that statement into account, together with all the other statements and evidence that they have. We want our police officers to engage in investigations to determine whether crimes occurred so that innocent people aren't arrested and that so truly guilty people don't get away. However, they should not ignore that investigation and the facts that they find as they seek to prosecute somebody and to get an arrest warrant for that person. But as we look back on the reconstructed affidavit and accept at least all of the statements that were known to the officer before that they were sworn out, why would these omissions be material given the low standard and given that we have a victim eyewitness account here that our case law has said alone, much less with all the corroboration here, could give rise to probable cause? Because the probable cause determination requires a credibility of determination of the witness, and all the evidence that is presented undermines the witness's credibility. It also explains the facts in a non-criminal way. Reading all of this information together does not create a fair probability that criminal conduct was afoot. I see that I am out of time. Thank you. Mr. Keller? Good morning. May it please the court, my name is James Keller and I represent the Appalachians in this matter. The court has touched on the core issue and really the only issue on appeal in this case, which is was there sufficient probable cause, even with the allegedly exculpatory information included in the affidavits? Did the district court commit reversible error in not reconstructing the affidavit with the inclusion of the alleged exculpatory information? Your Honor, my belief is that Judge Brand did reconstruct the affidavit. He states in his opinion, it's my job to reconstruct the affidavit with this information included, and then he walks through all of that information and states, with this information included, I still find that no reasonable officer would find a lack of probable cause. But as a district judge, what I would do is I would actually have, I would rewrite the affidavit and now include that exculpatory information. Was that done here? Your Honor, that was not literally done here, although anticipating this question, looking through the case law, it appears that in some cases the district court literally reconstructs the affidavit, much as Mr. Dempsey has in his brief, and in other cases it does not. In fact, in some cases the Third Circuit, having decided that there should have been a reconstruction, talks about the factors that would have been in the affidavit, but doesn't literally republish the affidavit. So I do not believe that was a reversible error. And Your Honor, what I believe Judge Brand did here was he did give Reed Dempsey the benefit of the doubt and said, I will assume, for current purposes, that the information given by witnesses who were not in the room at the time Mr. Fenowitz and Mr. Dempsey was alone, I'm going to give you the benefit of the doubt and say that was exculpatory and it was recklessly omitted. Where did the criminal conduct occur? Well, Your Honor, I would argue there was criminal conduct in two different places. There was criminal conduct behind closed doors, where Mr. Dempsey held Ms. Stefanowitz down by the wrist, and you can see in the record, which we produced a supplemental appendix in color, bruising to her wrist, where she says that she was pinched and struck in the breast. And we attached to the supplemental appendix, bruising to her breast, where she says I was injured, her words, in my butt, and bruising in my butt. And there are pictures showing bruising to her butt. So that's the conduct that she says happened in the dorm room alone, which is supported by pictures taken at the hospital. But on top of that, so there was criminal conduct in the room. There was a simple assault, there was harassment, there was unlawful restraint, because she said both times that he was holding down my hands, and the second time, when asked more precisely, she says he pinned me down and I felt like I couldn't get up and leave. That's false imprisonment. She also said both times the notion that her story has changed, Your Honor, is just not the case. The first time she was interviewed by a trained investigator on September 5th, she said that he had me pinned down and he was hard, pardon my language, but that's what she said, and getting off to it. Later, she specifies, when asked, well, where did you feel his erection, she says I felt the erection in my stomach slash vagina. But that story, that Mr. Dempsey was holding her down against her will and was aroused, was consistent throughout. Mr. Keller, is it then your position that the assault in question is a single continuous assault, or are the different charges that are raised in the complaint relating to events that took place in different places? Your Honor, there was an assault in the room, and there was also an assault in the hallway, because even some of the witnesses that Mr. Dempsey cites to confirm that the last thing that happened in the hallway was Reed Dempsey tackling Kelly from behind, knocking her to the ground, and causing bruising on her face. At least for a malicious prosecution, having probable cause for one count doesn't necessarily excuse or prevent the case from going forward as to other counts where there was not probable cause. So looking at the actual complaint, for example, on the charge of simple assault, it is very specific as to the nature of that, and that is that the defendant did cause visible injury to Kelly. These injuries are bruises and marks to her face, shoulders, and arms. Those injuries, according to her account and the witnesses, they seem consistent that those are things that took place in the hallway. I mean, there are other charges, some of which clearly relate to what is alleged to have happened in the room, but do we have some charges, like the simple assault, that by their terms relate to what took place outside the room only? Your Honor, I believe the way the simple assault complaint was phrased, as Your Honor has pointed out, which relates to the facial bruising, has to be tied to conduct that occurred in the hallway, because that's where the facial bruising occurred. However, the case law in this circuit is very clear. The officer only needs probable cause as to one count. You only need to have probable cause as to one count to defeat a claim. That's true for false imprisonment, but not for malicious prosecution, right? Yes. So as to malicious prosecution, if there were recklessly omitted material statements that relate to at least one of the counts, such as what happened in the hallway, where it seems that the witness accounts would support Reed's theory that he was acting in self-defense, or at a minimum that it was accidental rather than intentional or even reckless, wouldn't that be reversible error? Your Honor, I think there would still be a fair probability, with that evidence included, that Reed Dempsey assaulted Kelly Stefanowicz based on her explanation of what happened, which is he tackled me and knocked me down, based on Reed's apologies after the fact that he's sorry he did that, that it got out of hand. Is she okay? Based on the facial bruising, the records confirming facial bruising, the photographs confirming facial bruising. So I believe, Your Honor, even if what Judge Brand found to be exculpatory statements were included,  there would still be a fair probability that Reed Dempsey assaulted Kelly Stefanowicz. Isn't that reading the sanctuary requirement out of that particular charge? Because it needs to be intentional, knowing, or reckless. And the witness statements, when they're brought back in, as well as Reed's own statement, provide support for the idea that she was then being aggressive with him and that he was acting in self-defense, as he's put forward as his theory. If we're looking solely at that incident in the hall and the statements that were omitted, then don't we have a problem with looking at this reconstructed affidavit as to the material statements that were recklessly omitted? Your Honor, it would be my position that we do not, because there would still be a fair probability of evidence from Kelly from some of the statements indicating that this was intentional, that this was a continuance of what started in the room. So you would have those statements. But then the question is, would an officer, considering all that information, still find a fair probability that probable cause existed? And if we look at some of the other cases, Your Honor, for example, Russo. So in Russo, the omitted statements were Russo versus Wilson. Two of the eyewitnesses said that the guy who did it was 6'3 to 6'5 and Wilson's 5'10. Another witness said, I saw Wilson in a different place at the time of the offense. A third eyewitness couldn't identify Wilson in an array. And even with that sort of exculpatory evidence included, we have the wrong guy. The court said, district court held, and the Third Circuit affirmed, that there was still enough evidence indicating in that case robbery. I would argue even with the statements included in this case, there was still enough evidence for Officer Holtz-Apple to charge Redempsey with simple assault. And are you influenced at all by the fact that this third sequence of events, the hallway events, occurred after what the police learned about what happened privately between the two of them? Like, are you looking at this as a continuing rabbit hole? You said totality of the circumstances. Are you influenced by the fact that the officers also knew what happened privately? I am, Your Honor. I think that's what Officer Holtz-Apple was indicating, is there was an assault that started in the dorm room where Reed was restraining Kelly and bruised her, and there are pictures to prove that, that carried out into the hallway and ended up with her smashed into the rug with bruising on her face. And so the fact that there are witnesses who describe her as potentially being more aggressive or laughing, you feel that that is not something that discounts the existence of probable cause to believe an assault occurred in the hallway? I do not. I believe that, I don't believe that's even necessarily exculpatory, but given the posture we're in, accepting Judge Brand's view, that that was exculpatory. So to Your Honor's point, could that be considered exculpatory? And should it have been included in the affidavit which Judge Brand said, yes, it should have been. So let's say those statements are included in the affidavit and before the magistrate. There's still Kelly's story of what happened, which was this was the continuation of an assault, and I was fighting him because I wanted him to get away from me. He was assaulting me. I thought he tried to rape me. You have her immediate statement. Immediately after this ends, she talks to her roommate and says, Reed tried to take advantage of me. He was aroused. She tells the RA something different though. Kelly does? Kelly, in terms of saying she doesn't want to file a report that they were just playing and they got out of hand and she wants it to be over with. Your Honor, what RA Cena says that Kelly said to him is, it was not what Respectfully Appellant said, that it was all consensual. Those words are never said to RA Cena. He says, do you want to write up a report? She knows, and this evidence is in the record, I've got a field hockey game tomorrow. I'm going to get in trouble with my coach because I'm not supposed to be out drinking. I don't know what just happened. I don't know how to process this. So you know what? We were joking around. I'm going to bed. That is what she says to Cena. And that's not presented to the judge? It's not, Your Honor. It was not. But I would contend in the context, looking at the totality of the circumstances and including that, as Judge Brand said he did when he reconstructed the affidavit, it makes complete sense because you have a victim, someone who believes she was a victim or about to be a victim of sexual assault, who is in her, from her description, from the description she gave to her roommate immediately after the fact, immediately after the fact, believes she was fighting for her safety and is confronted by an RA at 2.30 in the morning and just wants to go to bed. I still think an officer in that situation has abundant probable cause for Redempsey's arrest. But we're not making an ultimate probable cause determination, right? We need to look at this under the standard of whether no reasonable jury could find a lack of probable cause. In this case, the sole issue on appeal, as narrowed by the appellant, is whether the exculpatory evidence was material to the affidavit, would have been material had it been included. Because our default rule is that these kinds of determinations go to a jury unless we're convinced that there could not, no reasonable jury or fact finder would come out the other way. That's right, Your Honor. So Judge Brand determined, and that is the standard, that under the totality of the circumstances, no reasonable juror could determine that a reasonable officer under these circumstances would have found a lack of probable cause. So you have to determine what would a reasonable juror think that a reasonable officer would do. And would a reasonable officer, presented with evidence from Kelly Stefanowicz's own statements, presented with the pictures that I've shown to the court, presented with her roommate's statement immediately after the fact, presented with a hospital record, determine that there was a lack of probable cause which only requires a fair probability. And I believe Judge Brand got it right, Your Honor. There is a point in the opinion where the district court says that there can be no liability on the part of the arresting officer unless no reasonably competent officer would conclude that probable cause existed. That may be the right standard for qualified immunity, but doesn't that set the bar too high for the probable cause determination that we make at this stage? And if, in fact, it sort of inverts it, and if the district court misstates that at at least one point and didn't engage in a reconstruction of the affidavit the way perhaps we think our cases in Wilson and Reedy suggest should be done, why shouldn't we remand for the district court to address these issues in the first instance and be sure that the proper standard has been applied? Your Honor, I believe that the reconstruction that Judge Brand performed is consistent with the case law in this circuit, and a literal reconstruction actually drafting the affidavit, while it happens sometimes if you look at the cases at the district court level and the third circuit level, it does not happen every time. So I think Judge Brand did perform a reconstruction. I think he did state the appropriate standards for probable cause, which is fair probability, and could a reasonable juror with all this information believe that there was a lack of probable cause and determine no reasonable juror could determine otherwise? I do believe that the no reasonably competent officer language, candidly, Your Honor, when I read the cases, I think sometimes it's evaluated as part of probable cause, and sometimes it's evaluated as part of qualified immunity. We didn't argue qualified immunity primarily in our brief, but of course we raised it below, and the court could affirm for any reason raised below, and we did raise qualified immunity below. If I might respond to another question. You just articulated that it's not that a reasonable juror could conclude that there was not probable cause. That may well be the case, but don't we need to decide that no reasonable juror could find a lack of probable cause? That's very different than saying a reasonable juror could find a lack of probable cause. Other reasonable jurors could find that there was probable cause. If we're in that sort of equipoise and reasonable minds might differ as to a reconstructed affidavit, at least perhaps as to what took place in the hallway, then doesn't this need to move forward toward a jury trial? Your Honor, if that's what I said, I misspoke. The standard is whether a reasonable juror, could any reasonable juror find there was a lack of probable cause? That's the standard judge brain articulated, and I believe you got it right. Thank you. Thank you very much. Thank you. Mr. Boyle. Thank you. There are just two points that I'd like to address. First of all, at its essence, this case involves disputed facts and how those disputed facts are to be resolved. Had those disputed facts been presented to you? I don't understand that. You say this case is about disputed facts, but we have all the witness statements. The question is what information was presented to the officers, and we have that. Do we have a dispute about what was presented to the officers? We don't have a dispute as to what was presented to the officers, and we know that none of this information was presented to the magistrate. The question is what does this evidence mean, the facts that the officer had and did not present? They create two different scenarios as to what happened. Somebody, a finder of fact, has to make a credibility determination as to who's believable and who's not believable. But in this context, the officer's not required to do that, and it's about whether the officer should have included this information. It doesn't have to make it, unless you can identify a case that says he needed to make a credibility determination. The credibility determination needed to be made for probable cause to exist for the arrest. The police officer deprived the magistrate of the opportunity to make that credibility determination by not presenting that information to the officer. With all this information that a magistrate, a neutral magistrate, would have had, the neutral magistrate may have said there was probable cause. He or she may have said there was not probable cause. The question is, in a civil rights case now, since that dispute is out there, who resolves that? And it's our position that only a jury can resolve that. Should we be sending this back to the district court for purposes of doing a reconstruction of an affidavit? So you've got your version of a reconstructed affidavit. I don't necessarily agree with your version of the reconstructed affidavit because maybe some of the inculpatory information that was obtained from other witnesses should have been included as well with the affidavit. Maybe everything you consider to be exculpatory, I wouldn't consider to be exculpatory. Should we be sending it back to have a record to review about what the reconstructed affidavit should be? I hadn't considered that point. We attempted to be fair and neutral in our reconstructed affidavit. I would prefer the court just accept ours. However, in the first instance, that is the job of the district court to do that. Mr. Keller may be correct that the judge may have covered those points, but our primary argument is that reasonable magistrates, reasonable finders of fact, could determine based upon the evidence that's out there whatever that may be. And perhaps another reconstructed affidavit would give another view of that. However, in the final analysis, it's our position that a magistrate needs to or should have determined probable cause. I'm sorry I'm out of time. In this circumstance, we would think in a civil rights case that that job under this court's case law falls to the jury at this point. Judge Schwartz, Judge Krause, any questions? No, thank you. Thank you very much. The case was very well argued. We'll take the matter under advisement and we're awaiting the